# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7515 | **DATE** | 6/9/2003 |
| **CASE TITLE** | | Harding vs. Jerry Sternes | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the Court denies the petition. Judgment is entered in favor of respondent. The Court issues a certificate of appealability as to both of Harding's claims, see 28 U.S.C. § 2253(c), as we believe that reasonable jurists could debate the correctness of our ruling. See generally Barefoot v. Estelle, 463 U.S. 880, 894 (1983).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | JUN 1 1 2003 | | |
| | Notified counsel by telephone. | | | date docketed | | 34 |
| ✓ | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 JUN 10 PM 4:58 | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

LINNELL HARDING, a/k/a )
Donnell Burt, )
            )
          Petitioner, )
            )
   vs. )    Case No. 00 C 7515
            )
JERRY STERNES, )
            )
          Respondent. )

JUN 1 1 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Linnell Harding[1] petitions for a writ of habeas corpus under 28 U.S.C. §2254 based upon his trial counsel's alleged ineffectiveness and the state trial court's decision to exclude what he believes was a key piece of evidence. For the reasons explained below, the Court finds that Harding is not entitled to relief on either claim, and we therefore deny the petition.

### Facts & Procedural History

At about 4:00 a.m. on August 10, 1991, Rafael Colon's car was stolen at gunpoint – literally right out from under him. A week later, while responding to a disturbance call, the police found Colon's car at a house on West Washington Street where Linnell Harding was hanging out. When the police learned that the car was registered to Colon, Harding, who initially had been arrested for disorderly conduct as a result of the disturbance at Washington Street, was

---

[1] Evidently, Harding's real name is Donnell Burt, but he was charged and convicted under the phony name that he gave to the police when he was arrested and filed this case in that name as well.

charged with armed robbery and possession of a stolen motor vehicle.

At trial, the prosecution called Colon, who described the carjacking and identified Harding as one of the perpetrators. It also called Officer Howard Lodding, one of the police officers who responded to the Washington Street call and ultimately found Colon's car in Harding's possession. Lodding testified that Harding told him the car was his and consented to the search of the car, which ultimately revealed that the car belonged to Colon.

After the court denied his motion for a directed verdict, Harding's attorney called Harding's brother, his mother and two of his cousins, all of whom testified that Harding was at his mother's house when Colon's car was taken. Additionally, Harding took the stand in his own defense, testifying that he did not steal Colon's car and that, at the time of the incident, he was at his mother's house. Harding admitted that he had been at the Washington Street address and had the keys to Colon's car. But he testified that a man he knew, Artric Jordan, had loaned him the car and given him the keys, and that he had no idea the car was stolen. Harding also attempted to show that Jordan had stolen Colon's car. Jordan had been arrested for carjacking less than three weeks after Colon's car was taken. But in response to a motion *in limine* filed by the prosecution, the trial court precluded Harding from introducing evidence of the arrest. The court did, however, permit Harding's attorney to recall Colon to the stand during the defense case to show him a mugshot of Jordan. Colon testified that he had never seen Jordan before and did not see him the night of the carjacking. Harding's attorney nonetheless argued to the jury, based on Harding's testimony and that of the alibi witnesses, that Jordan had stolen Colon's car.

Harding had several prior convictions, including one for armed robbery, one of the very offenses for which he was being tried. In response to a defense motion *in limine*, the trial court

ruled that if Harding testified, the prosecution could elicit that he had been convicted of felonies, as well as the dates of the convictions. But, the court ruled, the nature of the offenses was inadmissible because the jury "would tend to convict him just because he's an armed robber." Record, Z-9. The court also barred the prosecution from eliciting the sentences that Harding had been given, concluding that this information did not bear on Harding's credibility. *Id.,* Z-10.

As it turned out, however, the prosecution chose not to elicit Harding's priors on cross-examination. On re-direct, however, Harding's attorney raised the issue, over the prosecution's objection. Counsel questioned Harding regarding the fact that he had given a false name and address to the police when arrested, a matter about which the prosecution had questioned Harding on cross examination. Counsel asked Harding why he had done this, and Harding replied, "You know, it puzzle me right now today, that is one of the fear that you have of the polices really, it's one of the fears, you know." Trial Transcript, AA-235 - AA-236. There ensued the following examination:

Q: Have you ever been arrested before?

A: Yes, I have. Yes, I have.

Q: And you've been convicted, is that correct?

A: Yes, I have.

MR. CALLAHAN [prosecutor]: Objection, this is beyond the scope at this point, Judge.

              * * *

THE COURT: All right. Well, I'm going to leave it. So I'll overrule the State's objection.

MR. STANTON [defense counsel]: Q: On October the 7th of 1982 before his Honor Judge McNulty were you convicted of a crime?

3

A:     Yes, I was.

MR. CALLAHAN: Objection, this is beyond the scope.

WITNESS: Yes, I was.

THE COURT: Well, no, it is not. It's collateral but the cross-examination related to truthfulness, this relates to truthfulness.

MR. CALLAHAN: Fine, Judge.

MR. STANTON: Q: And as a result were you sentenced to thirty months probation?

A:     Yes, I was. Yes, I was.

Q:     On May the 1st of 1989 were you also convicted of the charge of unlawful use of weapon by a felon?

A:     Yes, I was.

Q:     And were you given a sentence of two years in the Illinois Department of Corrections?

A:     Yes, I was.

Q:     And on April 25th of 1984 were you convicted of the crime of armed robbery and unlawful restraint, were you convicted?

A:     I was convicted, I don't know what you mean though, I was convicted.

MR. STANTON: Judge, I made a mention of something here and I would ask whatever I made mention of be at this time –

THE COURT: All right.

MR. STANTON: Stricken from the record.

THE WITNESS: It is okay, I'll explain it.

THE COURT: I run the Court. What the record will show and the jury is to consider, one, that there is a conviction on April the 25th, 1984, of a felony.

4

MR. STANTON: Thank you.

THE COURT: And anything else will be disregarded.

MR. STANTON: All right. Q: And pursuant to that conviction you received a sentence of ten years Illinois Department of Corrections concurrent with a three year sentence, is that correct?

A: Yes.

Q: On all those convictions that you were sentenced to the Illinois State pen did you do your time?

A: Yes, I did. Yes, I did.

*Id.,* AA-236 - AA-238. On re-cross, the prosecution clarified that all of Harding's convictions had been for felonies, *id.* at AA-239, but asked him nothing further on the subject.

After hearing the evidence, a jury convicted Harding on both charges, and the trial judge sentenced him to concurrent prison terms of thirty-two years on the armed robbery charge and fourteen years on the possession charge. Harding appealed his conviction, arguing that the trial court erred by allowing Colon to make an in-court identification of Harding after suppressing his line-up identification as unduly suggestive and by excluding evidence that Artric Jordan had committed another carjacking nineteen days after Colon's car was stolen, and that Harding's trial attorney was ineffective for eliciting testimony about the details of his prior convictions.

The Illinois Appellate Court rejected all three of Harding's arguments and affirmed his conviction. With respect to the claim regarding the exclusion of Jordan's carjacking arrest, the appellate court held that the claim raised an evidentiary matter committed to the sound discretion of the trial court, and that, given the dissimilarities between the subsequent carjacking and the carjacking involving Colon's car, the trial court did not abuse its discretion in excluding the

evidence. *People v. Harding*, No. 1-93-3404, slip op. at 8-10 (Ill. App. Jan. 12, 1998). With respect to Harding's ineffective assistance of counsel claim, the court noted that even if the decision to introduce other crimes evidence could not be chalked up to trial strategy, "the erroneous admission of [such] evidence is harmless where properly admitted evidence is so overwhelming that no fair-minded jury could vote for acquittal." *Id.* at 13 (citing *People v. Lindgren*, 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244 (1980)). The court implicitly held that this was true in Harding's case: "Defendant's conviction was based upon the victim's identification of defendant at trial, and upon evidence that the victim's car was found in defendant's possession and that he had claimed to be its owner." *Id.* at 14. The court also found that Harding had "voluntarily and affirmatively acquiesced in the actions of his counsel when he stated, 'It is okay, I'll explain it.'" and that "[h]aving done so, [he] cannot now claim prejudicial error meriting a new trial." *Id.* Finally, the court held that any error was remedied when the trial court "granted defense counsel's request to strike the testimony and instructed the jury to disregard it." *Id.*

After the Appellate Court affirmed his conviction, Harding petitioned for leave to appeal to the Illinois Supreme Court, raising the same three issues, but the court summarily denied his petition. Harding then filed a petition for post-conviction relief, raising eight new claims. He argued that (1) his due process rights were violated when the state knowingly elicited false testimony from one of its police officer witnesses;(2) he was denied his 6th Amendment right to confront and cross examine that false testimony; (3) he was denied due process because the state knowingly suppressed evidence; (4) his appellate counsel was ineffective for failing to raise issues on direct appeal; (5) his appellate counsel was ineffective for failing to interview Artric Jordan; (6) he was denied a fair and impartial jury because his trial attorney failed to challenge

prospective jurors for cause; (7) he was denied due process when one of the officers on the case destroyed evidence of a suggestive line-up and fabricated other line-up reports introduced into evidence; and (8) he was denied due process based upon the excessive delays during the appellate process.

The trial court concluded that the post-conviction petition was untimely and, alternatively, that the claims would otherwise not entitle Harding to relief. Specifically, the court found that claims (1), (2), (3), (6) and (7) either had been, or should have been, raised on direct appeal and were therefore barred by the doctrines of *res judicata* and waiver. Order dismissing post-conviction petition, pp. 8-9 (May 27, 1998). Additionally, the court found that claims (1), (2), (3), (7) and (8) were unsubstantiated and without merit, *id.*, pp. 7-12, and that Harding's ineffective assistance of counsel claims ((4) and (5)) were either without merit or did not provide any basis for post-conviction relief. *Id.*, pp. 12-15. Harding appealed the dismissal of his post-conviction petition, and his court-appointed attorney filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Harding responded with a brief in which he attempted to outline the merits of his claims; nevertheless, the appellate court granted counsel's *Finley* motion and affirmed the dismissal of the post-conviction petition. Harding requested a rehearing and filed a petition for leave to appeal to the Illinois Supreme Court; both were denied.

Harding then filed a petition for a writ of habeas corpus in this Court, raising the same claims he raised in his appeal and his petition for post-conviction relief, plus one new claim. After an initial review of the petition and supporting materials, the Court appointed an attorney to represent Harding. On September 17, 2002, appointed counsel was granted leave to file an amended petition. In the amended petition, Harding narrowed the focus to two of the claims

7

raised in the initial petition – the ineffective assistance of counsel claim and the claim relating to the exclusion of Jordan's carjacking arrest. Harding later clarified that although he continues to believe many of the other issues he previously raised have merit, none raises a viable habeas corpus claim, and he is therefore not seeking relief on the basis of those other claims. *See* Petitioner's Reply to Respondent's Answer, ¶11. Thus the only claims before the Court are the claim that his attorney's questions about his prior convictions constituted ineffective assistance of counsel in violation of the Sixth Amendment and the claim that the trial court's exclusion of Jordan's arrest deprived him of a fair trial in violation of the Fourteenth Amendment's Due Process Clause.

## Discussion

A petitioner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless that state decision (1) was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d)(1) & (2). Additionally, we must presume that the state court's factual determinations are correct, unless the petitioner offers clear and convincing evidence to the contrary. *Id.* §2254(e)(1). With these basic principles in mind, we consider Harding's claims.

A.    Ineffective Assistance of Counsel Claim

Before turning to the merits of Harding's ineffective assistance of counsel claim, the

Court must first address the respondent's argument that the claim has been procedurally

defaulted. Procedural default occurs when the petitioner fails to present a claim to the state

courts at the time, and in the way, required by the state. *See, e.g., Hogan v. McBride*, 74 F.3d

144, 146 (7th Cir.1996). *See also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citing

*Picard v. Connor*, 404 U.S. 270, 275 (1971); *Verdin v. O'Leary*, 972 F.2d 1467, 1472-73 (7th

Cir. 1992)). There is no question that Harding fairly presented this claim to the Illinois state

courts. By briefing and arguing the claim on appeal and including it in his petition for leave to

appeal to the Illinois Supreme Court, he "invoke[d] one complete round of the State's established

appellate review procedures" and gave the state courts "one full opportunity to resolve [the]

constitutional issue . . . ." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

As part of his procedural default argument, respondent contends that Harding forfeited

the issue by acquiescing in his attorney's line of questioning, and to support his position he cites

*People v. Enis*, 194 Ill. 2d 361, 743 N.E.2d 1 (2000). In *Enis*, the defendant claimed that his

attorney was ineffective for keeping him off the stand at trial and for failing to consult with him

about the decision to do so. *Id.* at 399, 743 N.E.2d at 22. The Illinois Supreme Court recognized

that the decision whether to testify ultimately belongs to the defendant. *Id.*, 743 N.E.2d at 23.

But because the defendant acknowledged that he knew he had the right to testify – indeed, he had

testified at his first trial, because the defendant never told his attorney that he wanted to testify,

and because he said nothing when the attorney told him he wasn't going to put him on the stand,

the court found that Enis had acquiesced in the decision not to testify. *Id.* at 398-99, 743 N.E.2d

9

at 23.

Saying that a defendant can acquiesce in the decision not to call him to testify is not the same as saying a defendant can acquiesce in a particular line of questioning from his attorney; decisions concerning what questions to ask witnesses rest with the attorney, who presumably has the working legal knowledge to permit him to gauge the import of those questions and the potential impact each may have on the jury. In addition, a defendant sitting on a witness stand is hardly in a position to have any impact on or input in the questions his lawyer asks (particularly those which, as in this case, the lawyer clearly decides to ask on the fly). And if he refuses to answer, he risks incurring the judge's wrath and the jury's disdain. Conversely, Harding's expressed willingness to answer his lawyer's questions cannot sensibly be viewed as acquiescence in the lawyer's legal tactics; one cannot reasonably read into this anything beyond a desire to appear cooperative. Moreover, based on defense counsel's conduct in connection with the motion *in limine* to exclude the prior convictions, Harding no doubt thought that the details of his prior convictions would not come up – especially on questioning from his own attorney.

Most importantly, for Harding to be considered, under *Enis*, to have "acquiesced" in counsel's decision to bring out the nature of Harding's prior convictions, there would have had to be an opportunity for him to oppose or comment on the decision before it was implemented. In *Enis*, the defendant conceded that counsel had advised him that he (the defendant) would not be testifying; the "acquiescence" consisted of the defendant's failure after learning this to tell counsel or the court that he wanted to testify. Harding had no such opportunity.

Finally, the Appellate Court discussed Harding's purported "acquiescence" only after addressing the merits of Harding's claim. *People v. Harding,* slip op. at 13-14. Accordingly, the

10

state court's ruling does not rest on an independent state procedural ground that would preclude our consideration of the merits of Harding's claim. *See generally Coleman v. Thompson,* 501 U.S. 722, 733-35 (1991).

We therefore turn to the merits. Under pre-AEDPA standards, although federal courts deferred to the state court's findings of fact, we were not required to defer to the state courts on legal questions or mixed questions of law and fact but rather could make independent, *de novo* judgments on such issues. *See* 28 U.S.C. § 2254(d) (1994); *Sumner v. Mata,* 455 U.S. 591, 597 (1982); *Koo v. McBride,* 124 F.3d 869, 872 (7th Cir. 1997); *Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir. 1995). "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact," *Strickland v. Washington,* 466 U.S. 668, 698 (1984), and thus under pre-AEDPA standards, we would have reached our own independent judgment concerning whether Harding's attorney performed deficiently and whether Harding was prejudiced as a result.

That is no longer the case. Under AEDPA's amendments to §2254(d), our inquiry is limited to asking whether the state court's adjudication of the ineffective assistance claim was "contrary to, or involved an unreasonable application of" *Strickland v. Washington. See* 28 U.S.C. § 2254(d)(1). A decision is "contrary to" Supreme Court precedent if it is "diametrically different," "mutually opposed" or "substantially different from the relevant precedent of [that] Court." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). As the Court explained,

> [if] a state court decision on a prisoner's ineffective assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim . . . [,] the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the

prisoner's habeas application might reach a different result applying the *Strickland* framework itself. . . . Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

529 U.S. at 406. With respect to the "unreasonable application" language of §2254(d)(1), *Williams* instructs that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-10. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "Under §2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

To make out a successful ineffective assistance of counsel claim, Harding was required to demonstrate that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced his defense that it deprived him of a fair trial. *Strickland*, 466 U.S. at 688-94. Under the performance part of the test, the state court was required to determine whether, in light of all the circumstances, the particular acts or omissions identified by Harding fell "outside the wide range of professionally competent assistance." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Under the prejudice part of the test, the court was required to determine whether Harding had shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.*

On the performance part of the *Strickland* test, Harding argued that his trial attorney's decision to ask him about his prior convictions, especially his conviction for armed robbery, fell below an objective standard of reasonableness. The Appellate Court made no findings concerning whether counsel's performance was objectively unreasonable; rather, it focused its analysis exclusively on the prejudice part of the test. *People v. Harding*, slip op. at 14-15. Thus, we write on a clean slate, unconstrained by any factual or legal findings.

When assessing counsel's performance, we apply a "strong presumption that counsel rendered reasonably effective assistance," *United States v. Limehouse*, 950 F.2d 501, 503 (7th Cir. 1991) (citing *Strickland,* 466 U.S. at 689), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted). It does appear from the record that Harding's counsel had a strategic reason of sorts for questioning Harding about his prior convictions: he hoped it would help explain to the jury why Harding had given the police a phony name and address. But the mere incantation of the term "strategy" does not insulate an attorney's actions from review. *See, e.g., Hardwick v. Crosby,* 320 F.3d 1127, 1185-86 (11th Cir. 2003); *Hooper v. Mullin,* 314 F.2d 1162, 1169-70 (10th Cir. 2002). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000).

Counsel's "strategy" was, at best, bone-headed; it was not a reasonable strategic choice. He plainly recognized the risk of significant prejudice to Harding if his prior convictions were admitted; that much is clear from his pre-trial request to bar the prosecution from introducing the convictions. And although counsel reasonably might have been concerned that the jury would

13

infer a general lack of credibility from Harding's use of a phony name, counsel's cure was far worse than the injury. Prior-conviction evidence is generally viewed as among the types of evidence that poses the most severe risk of unfair prejudice to a criminal defendant. *See generally Old Chief v. United States*, 519 U.S. 192, 180-81 (1997) ("'Although ... "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged – or that, uncertain of guilty, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance.'") (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)); *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). Even if we attempt (as *Strickland* requires) to view things from counsel's perspective at the time and eliminate the clear vision of hindsight, it is virtually unfathomable that Harding's own counsel, having argued that the priors were unfairly prejudicial, and then having ducked a bullet when the prosecution did not introduce them on cross examination, would *himself* bring them out in his redirect.

Even were the Court to conclude that deference to "strategy" excused counsel's decision to introduce the prior convictions in the first place, in evaluating counsel's conduct we cannot confine our examination to the reasonableness of the strategy itself; we must also assess its execution. The execution of the so-called strategy was, in a word, atrocious. Counsel introduced the key item of evidence that he had previously succeeded in excluding: the fact that Harding had been convicted of the selfsame crime for which he was on trial. *Cf. Lyons v. McCotter*, 770 F.2d 529 (5th Cir. 1985) (counsel's failure to seek exclusion of defendant's prior conviction for same offense for which he was on trial constituted ineffective assistance; "there could be no strategic basis for allowing the jury to hear that [defendant] previously had been convicted of the

14

same offense for which he stood trial"); *United States v. Washington,* 746 F.2d 104, 105 (2d Cir. 1984) ("the fact that the prior conviction was for a crime very similar to the one on trial made its introduction highly prejudicial"); *United States v. Shapiro,* 565 F.2d 479, 481 (7th Cir. 1977) ("in view of the similarity between the prior convictions and the charged offense, the risk of unfair prejudice was especially great"). The transcript appears to reflect that this was a flub on counsel's part, and not a considered decision; he immediately attempted to correct the error after he made it. But *Strickland* does not insulate mental lapses from scrutiny, and indeed it is reasonable to infer that the error resulted from the fact that counsel was making up his "strategy" as he went along, thus increasing the odds that such errors would occur. However one views counsel's decision to go into the prior convictions in the first place, we have no hesitation in concluding based on the manner in which he did this – by bringing out that Harding had been convicted of armed robbery, not to mention the length of the prison term he had served – that counsel's performance fell well below the threshold of professional competence set by *Strickland.*

But demonstrating that his trial counsel was egregiously ineffective is not enough. Harding was still required to demonstrate that counsel's deficient performance actually prejudiced him. *See Strickland,* 466 U.S. at 691. The Appellate Court found that he had not done so. It stated that even if counsel's performance was deficient, "the erroneous admission of other crimes evidence is harmless where properly admitted evidence is so overwhelming that no fair-minded jury could vote for acquittal." *People v. Harding,* slip op. at 14 (citing *People v. Lindgren,* 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244 (1980)). The court held that this was the case, noting that Harding's conviction "was based upon the victim's identification of defendant

at trial, and upon evidence that the victim's car was found in defendant's possession and that he had claimed to be its owner." *Id.*

Our review of the state court's prejudice analysis is subject to AEDPA's "contrary to" and "unreasonable application" standards. *Williams,* 529 U.S. at 391. The court's decision that Harding failed to demonstrate prejudice was not "contrary to" *Strickland,* as the court cited *Strickland's* prejudice standard and applied that standard in rejecting Harding's claim (Harding does not argue otherwise). *See Strickland,* 466 U.S. at 695-96 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . . In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . [and] a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.") *See also Mahaffey v. Schomig,* 294 F.3d 907, 918 (7th Cir. 2002) ("Assuming deficient performance, [petitioner] cannot satisfy the prejudice prong of the *Strickland* test because, even ignoring his confession, overwhelming evidence supported his conviction."); *United States v. Hubbard,* 22 F.3d 1410, 1422 (7th Cir. 1994) ("The prejudice prong of *Strickland* 'requires a showing that the incompetence made the trial fundamentally unfair or made the convictions unreliable,'" and overwhelming evidence of the defendant's guilt prevents him from meeting this high prejudice standard) (citing *United States v. Alex Janows & Co.,* 2 F.3d 716, 721, 722 (7th Cir. 1993)).

Nor can we say that the state court's decision involved an "unreasonable application" of *Strickland.* Although this Court does not agree that the evidence against Harding was overwhelming, the state court's decision on the prejudice issue was not so wide of the mark as to

16

be unreasonable. The victim testified that he was face-to-face with the carjacker for roughly thirty seconds (Tr. AA-26 - AA-28, AA-45) and that the scene was illuminated by streetlights during that time (Tr. AA-22), and he testified that he saw Harding at a hearing about a week after the incident and immediately recognized him as the man who pointed a gun to his head and stole his car (Tr. AA-33 - AA-34). Additionally, when shown Jordan's mugshot, Colon testified that he had never seen Jordan before (Tr. BB-10). And Harding's alibi evidence was arguably suspect; the prosecution was able to impeach his witnesses on various bases (his brother, for example, had a criminal conviction for criminal sexual assault). Moreover, Colon's testimony was buttressed by that of Officer Lodding, who testified that Harding told him the car was his, that Harding consented to a search of the car, and that in the course of that search he found Colon's insurance papers and license plates (Tr. AA-86 - AA-87). And finally, the Appellate Court relied on the fact that the trial judge struck from the record and effectively told the jury to disregard counsel's reference to Harding's prior armed robbery conviction, the most prejudicial aspect of the evidence counsel introduced. The court's decision that Harding could not establish prejudice within the meaning of *Strickland* was not unreasonable as *Williams v. Taylor* defines that term.

Were this Court free to make an independent judgment on the issue, we likely would reach a different conclusion from that of the Appellate Court. Eyewitness identification testimony is not as reliable as most laypersons believe, *see, e.g., Newsome v. McCabe,* 319 F.3d 301, 305 (7th Cir. 2003), and indeed there is evidence indicating that Colon's in-court identification of Harding was not so reliable. After finding that the officers involved had tinkered with the line-up evidence, the trial court suppressed Colon's line-up identification as

unduly suggestive. Record, H-26 - H-27. And Colon's testimony makes clear that prior to identifying Harding in court, he had seen Harding on five occasions in the context of court proceedings where Harding was quite obviously the subject of the prosecution. This, compounded by the numerous discrepancies in Colon's statements about the carjacker's physical attributes (height, weight, presence of facial hair or scars), make Colon's in-court identification somewhat suspect. Given these infirmities, it certainly becomes more probable that the result of Harding's trial would have been different without the evidence of his criminal background. But the evidence tending to weaken the identification was largely covered by Harding's counsel on cross examination of Colon, and the Appellate Court was entitled to conclude, albeit *sub silentio,* that it did not undermine the validity of the identification.

As for the limiting instruction upon which the Appellate Court relied, the trial court struck from the record only the reference to the specific offenses for which Harding had been convicted in April 1984 (armed robbery and unlawful restraint). The fact that he had served a prison term on an earlier felony remained untouched, and to compound the error counsel immediately followed the court's corrective instruction by eliciting that for the April 1984 conviction – the armed robbery – Harding had been sentenced to ten years in prison and "did [his] time." But the Appellate Court's implicit conclusion that it was only the armed robbery reference that unfairly prejudiced Harding, and its willingness to rely on the instruction to the jury to disregard that reference, were within the range of reasonableness and thus cannot be overturned even if we believe the court's decision was incorrect. *See Williams,* 529 U.S. at 411.

For these reasons, the Court rejects Harding's ineffective assistance claim.

18

B.    Due Process Claim

In addition to his ineffective assistance of counsel claim, Harding claims that "the exclusion of the arrest for carjacking of Artric Jordan was material to his defense and deprived him of a fair trial." Amended Petition, ¶17. Before turning to the merits, we consider the respondent's contention that Harding never fairly presented this claim to the state courts in federal constitutional terms. "[A] petitioner seeking federal habeas relief must establish that he presented 'fully and fairly his federal claims to the state courts . . . .'" *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Id.* (quoting *Picard*, 404 U.S. at 277).

In presenting this claim to the Illinois appellate court, Harding argued in an introductory paragraph that "[t]he court's refusal to allow him to [introduce the evidence] violated his constitutional right to introduce evidence in his own defense and denied him a fair trial." Appellate Brief, p. 14. The remainder of his argument, however, amounted to a state law evidentiary challenge based upon an alleged abuse of discretion; he focused on how the trial court should have gauged the probative value of the evidence against its prejudicial nature. *See id.*, pp. 15-17. The Appellate Court treated the claim as "an evidentiary matter committed to the sound discretion of the trial court . . . ." *People v. Harding*, slip op. at 8. Based largely on the differences between the Colon carjacking and the carjacking for which Jordan was subsequently

19

arrested, the court concluded that the trial court had not abused its discretion in excluding the evidence. *Id.* at 9-10. Harding's petition for leave to appeal to the Illinois Supreme Court copied verbatim his appellate brief, which means that the nature of the claim remained the same.

In his amended habeas petition, Harding analyzes the exclusion of Jordan's carjacking arrest in terms of constitutional principles, citing federal cases and arguing that he had a right to present evidence in his own defense, that the evidence was relevant and material, and that any competing interest the state might have had in excluding the evidence was far outweighed by the probative value for Harding. Amended Petition, ¶¶18-19. Harding also argues that the exclusion was highly prejudicial and could not have constituted harmless error because it prevented him from corroborating his theory of defense. *Id.*, ¶20. Though the governing legal principles differ, the thrust of his argument is essentially parallel to the one he made in the state court. "Mere variations in the same claim" do not compel a finding that the claim was not fairly presented to the state court, unless "[a] petitioner's reformulation of his claim . . . 'place[s] the claim in a significantly different posture by making the claim stronger or more substantial.'" *Chambers*, 264 F.3d at 738 (quoting *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980); *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001)). It is not clear that such is the case here. Although "[a] mere 'passing reference' to a constitutional issue certainly does not suffice" to fairly present a claim, *Chambers*, 264 F.3d at 738 (quoting *Fortini v. Murphy*, 257 F.3d 39, 44 (1st Cir. 2001)), we are inclined to give Harding the benefit of the doubt in light of the fact that his state court briefs "assert[ed] the claim in terms so particular as to call to mind a specific [federal] constitutional right." *Verdin v. O'Leary,* 972 F.2d 1467, 1473 (7th Cir. 1992). We therefore proceed to the merits.

The state court excluded Jordan's carjacking arrest because it did not meet the state law requirements for introduction of "other act" evidence; in light of the Appellate Court's decision to uphold that ruling, we must deem it correct as a matter of Illinois law. Thus Harding's federal constitutional claim arises, if at all, under *Chambers v. Mississippi,* 410 U.S. 284 (1973), in which the Supreme Court held that state evidence rules must, in limited circumstances, give way to an accused person's Sixth Amendment right to present a defense. As noted earlier, the Illinois Appellate Court did not address Harding's claim in these terms, and thus we again write on a relatively clean slate.

The fact that a state court has determined that a particular piece of evidence can be excluded under the state's evidence rules does not necessarily mean that it can be excluded consistent with the federal Constitution; "the state court might as in *Chambers* itself have applied an evidentiary rule more restrictive than the Supreme Court interprets the Constitution as permitting." *See, e.g., Edmunds v. Deppisch,* 313 F.3d 997, 999 (7th Cir. 2002). But a state law is not deemed to abridge an accused person's right to present a defense unless it is "arbitrary" or "disproportionate to the purpose[ ] [it is] designed to serve." *Rock v. Arkansas,* 483 U.S. 44, 56 (1987); *United States v. Lea,* 249 F.3d 632, 642-43 (7th Cir. 2001).

In this case, the state court applied the Illinois common law equivalent of Federal Rule of Evidence 404(b), which no one supposes to run afoul of the principles established in *Chambers* and *Rock. Cf. Edmunds,* 313 F.3d at 999 (saying the same thing about Wisconsin's equivalent of Federal Rule of Evidence 403). Thus as in *Edmunds,* "if the [state court's] ruling was reasonable, there is no basis for deeming it unconstitutional." *Id.* And in fact the state court's ruling was reasonable. The court excluded the evidence due to the differences between

the other incident involving Jordan and the carjacking of Colon's car. As the Appellate Court put it, the two incidents differed "in the offenders' choice of location, time of day, number of victims, and weapon." *People v. Harding,* slip op. at 9. Thus, it concluded, there was "no substantive or meaningful link" between the two incidents. *Id.* Though this Court might have ruled differently had it been presiding over Harding's trial – Harding provided a "link" via his testimony that Jordan had loaned him the car – the differences in the two incidents were significant enough to make the state court's ruling a reasonable one that was well within the bounds of the rules of evidence and did not run afoul of Harding's constitutional right to present a defense.

For these reasons, the Court rejects Harding's due process claim.

## Conclusion

For the reasons explained above, the Court denies the petition and directs the Clerk to enter judgment in favor of respondent. The Court issues a certificate of appealability as to both of Harding's claims, *see* 28 U.S.C. § 2253(c), as we believe that reasonable jurists could debate the correctness of our ruling. *See generally Barefoot v. Estelle,* 463 U.S. 880, 894 (1983).

Dated: June 9, 2003

MATTHEW F. KENNELLY
United States District Judge